UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEBRA PRATT,

        Plaintiff,

    v.                                                 Case No. 22-C-568

WISCONSIN ALUMINUM FOUNDRY,

        Defendant.

## DECISION AND ORDER

    Plaintiff Debra Pratt, proceeding *pro se*, brought this action against Defendant Wisconsin Aluminum Foundry (WAF), alleging that WAF discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it paid her less than a similarly situated male employee and terminated her employment because of her sex. Pratt also alleged that WAF created a sex-based hostile-work environment and retaliated against her for engaging in protected activity. Compl. ¶¶ 6, 24, Dkt. No. 1. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The case is before the court on WAF's motion to dismiss pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6).

    WAF filed its motion on June 30, 2022. Dkt. No. 7. On August 10, 2022, after the time for Pratt to respond had expired, WAF requested that the court dismiss the case as a sanction pursuant to the local rules. *See* Dkt. No. 14 (citing Civil L.R. 7(d)). On August 16, 2022, Pratt filed a letter response in which she explained that she was under the impression that she would respond to WAF's motion at a scheduling conference and responded to WAF's motion to dismiss. Dkt. No. 15 at 1. Given Pratt's *pro se* status, the court declines to impose a sanction for her late

response and will proceed to address WAF's motion on its merits. *See Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) (noting "a district court may point a pro se litigant toward the correct procedure or 'take appropriate measures to permit the adjudication of pro se claims on the merits.'" (quoting *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996))).

## ALLEGATIONS OF COMPLAINT

Pratt alleges in her complaint that she was hired by WAF in August 2016 as a Benefits Administrator at a salary of $55,000 per year with an annual bonus of between 5% and 20%. Compl. ¶ 7. In February 2017, she was promoted to the position of Human Resources Manager at a salary of $60,000 per year and reported to Benjamin Jacobs, Stephen Taylor, and Kory Brockman. *Id.* at ¶ 8. In that role, Pratt investigated complaints of harassment and discrimination brought to her by WAF employees. *Id.* at ¶¶ 10, 12–16.

While employed by WAF as an HR Manager, Pratt alleges WAF violated Title VII in several ways from 2017 through 2018. First, in May 2017, WAF hired a male Environmental, Health, and Safety manager who was similarly situated to Pratt with respect to his background and experience, but WAF paid him substantially more than it paid Pratt. When she inquired about the discrepancy, Jacobs told her, "we'll get you there," but her salary was never increased. *Id.* at ¶¶ 8–9. Second, in April 2017, a female employee began complaining to Pratt about the behavior of Eugene Boyd, a WAF vice president, which the employee perceived to be sexual harassment that created a "hostile work environment." *Id.* at ¶ 10. Pratt alleges she reported Boyd's behavior to Jacobs, Taylor, and Brockman, and she was chastised by Jacobs and Taylor. Boyd then learned of the complaint and then allegedly turned his harassing behavior onto Pratt herself. Despite her complaints to "Defendant's Upper Echelon," Pratt alleges that WAF took no action. *Id.* at ¶¶ 10–11. Third, in October 2017, a male employee complained to Pratt about racial discrimination,

2

disclosing to her that another male employee, who was in a supervisory role over him, told him that he was passed over for a promotion due to his race. Pratt alleges she was retaliated against for investigating. *Id.* at ¶ 12.

Fourth, in February 2018, a male employee complained to Pratt about improper behavior of a sexual nature that took place during daily meetings, perpetrated by Boyd and a certain female employee. *Id.* at ¶ 13. Fifth, sometime between April 2017 and August 2018, Boyd retaliated against Pratt for doing her job as an HR Manager and even broke into Pratt's office in search of documents related to Pratt's investigations. *Id.* at ¶ 14. Boyd stated to his "direct reports" that he would "get [Pratt]" because of her investigations into his behavior. *Id.* Sixth, in August 2018, Jacobs and Boyd "coach[ed]" their direct reports to "assassinate [Pratt's] character" with a consulting group that was hired by WAF to address its workplace culture. *Id.* at ¶ 17. Seventh, in December 2018, Pratt received "an increase but not a bonus" after her annual appraisal, which she alleges was "retaliatory for her investigation and opposition to harassment and discriminatory practices." *Id.* at ¶ 18. WAF terminated Pratt on March 15, 2019. *Id.* at ¶ 21.

Pratt submitted her written Charge of Discrimination based on sex and retaliation with the Equal Employment Opportunity Commission (EEOC) on August 16, 2019. Dkt. No. 1-1. She alleged she was subjected to harassment and retaliation when she engaged in protected activity and investigated complaints of harassment and discrimination. Pratt also alleged that she was paid less than male employees, subjected to harassment and ultimately discharged in violation of Title VII. *Id.* The EEOC issued her a "right to sue" letter on March 10, 2022, and she commenced this action on May 22, 2022.

Based on the allegations in her complaint, Pratt claims that WAF violated Title VII by discriminating against her based on her sex, subjected her to a sex-based hostile work environment,

3

and retaliated against her for protected conduct. *Id.* at ¶¶ 6, 24. She asks this court to award back pay with interest; compensatory and punitive damages, both in amounts to be proven at trial; and attorney's fees and costs. *Id.* at 10.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Federal Rule of Civil Procedure 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that, for most cases, a plaintiff must offer something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), before the doors to expensive and time-consuming discovery will be opened. The *Twombly* Court recognized the need for caution before dismissing a case at the pleading stage, and before discovery has begun, but it also noted that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." 550 U.S. at 558 (internal quotation marks and citation omitted). The Court therefore held that it was not enough to allege the mere possibility of a claim. *Id.* at 560–61. A plaintiff must allege sufficient factual matter to show his or her claim is at least facially plausible. *Id.* at 570.

But the pleading standard announced by the Court in *Twombly* and *Iqbal* does not appear applicable in employment discrimination cases, especially in cases where the plaintiff proceeds *pro se*. Notwithstanding *Twombly* and *Iqbal*, "the Seventh Circuit has held that a formulaic recitation of the elements of an employment discrimination claim will do." *McKay v. City of*

4

*Chicago*, No. 14-C-10446, 2017 WL 11567310, at *2 (N.D. Ill. May 23, 2017). In *Tomayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008), the Court of Appeals held that "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." And in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013), the Court of Appeals held that this minimal pleading requirement survived the Court's decisions in *Twombly* and *Iqbal* because a conclusory complaint of employment discrimination had been held sufficient by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), and had not been expressly overruled by the Court in *Twombly*, *Iqbal*, or any subsequent case. *Luevano*, 722 F.3d at 1028 ("Neither *Iqbal* nor *Twombly* overruled *Swierkiewicz*, and it is our duty to apply the Supreme Court's precedents unless and until the Supreme Court itself overrules them."). The court in *Luevano* also noted that "the pleading standards for pro se plaintiffs are considerably relaxed," even in the wake of *Twombly* and *Iqbal*. *Id.* at 1027 (citations omitted); *see also Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (reminding courts to "construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (explaining after *Iqbal* that the plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together").

## ANALYSIS

Except for her hostile workplace claim, Pratt's complaint meets this relaxed pleading standard. She asserts three claims under Title VII: sex discrimination, *see* 42 U.S.C. § 2000e–2(a)(1), the creation of a hostile work environment based on sex, *see id.*; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986), and retaliation, *see* 42 U.S.C. § 2000e–3(a). To repeat, in *Tamayo*, the court held that, "in order to prevent dismissal under Rule 12(b)(6), a complaint

5

alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." 526 F.3d at 1084. "In these types of cases," the court said, "the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* at 1085 (plaintiff sufficiently pled violation of Title VII where she alleged salary discrepancy and that "she ha[d] been subjected to adverse employment actions by Defendants on account of her gender"). Pratt has clearly alleged that she suffered specific adverse employment actions in the form of lesser pay and ultimately termination on account of her sex and protected activity. This is enough at the pleading stage.

Pratt also alleges, however, that she was subjected to a hostile work environment in violation of Title VII. An employer violates Title VII if it is responsible for a "hostile work environment." *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). A hostile environment is one that is "permeated with discriminatory intimidation, ridicule and insult." *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001). To state a hostile environment claim based on sex, a plaintiff must allege (1) she was subject to unwelcome harassment, (2) the harassment was based on her sex, (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment, and (4) a basis exists for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Pratt has not plausibly pleaded the third element, that the harassment was severe or pervasive enough to alter the conditions of employment. Thus, she has failed to plead an adverse employment action as to that claim.

A hostile environment claim requires that the harassment be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Whether an environment is sufficiently

6

hostile "can be determined only by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Additionally, the environment must be both objectively and subjectively hostile to fall within Title VII's purview. *Id.* at 21–22.

Pratt fails to allege any conduct that meets this standard. Her complaint alleges that she was subjected to verbal harassment and that Boyd broke into her office and threatened to "get her." Dkt. No. 1 at ¶ 14. But she fails to specify what was said, what the verbal harassment consisted of, the frequency and severity of the conduct, or any of the details that would indicate that it rose to the level required to support a hostile work environment claim. To be sure, "a workplace need not be 'hellish' to constitute a hostile work environment." *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). But without additional details, the court cannot conclude that the alleged conduct here rises to the level of severe or pervasive conduct required to support a hostile work environment claim. *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13-cv-06500, 2014 WL 4269126, at *7 (N.D. Ill. Aug. 28, 2014) ("Plaintiff's allegations in the Amended Complaint, while no doubt describing rude and unpleasant conduct, by themselves do not seem to rise to the level of the hostile and abusive atmosphere found in the case law." (collecting cases)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (citations omitted)). Because Pratt fails to allege facts sufficient to show such a claim is plausible, her hostile work environment claim will be dismissed but without prejudice.

7

WAF argues that most of Pratt's allegations are time-barred under Title VII. Before commencing a Title VII suit, a plaintiff must first file a timely charge with the EEOC. *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210 (2010). Because of the interplay between state and federal remedies, Pratt was required to file her charge within 300 days "after the alleged unlawful employment practice occurred." § 2000e–5(e)(1). Determining whether a plaintiff's charge is timely thus requires "identify[ing] precisely the 'unlawful employment practice' of which he complains." *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980). Here, Pratt complains of the alleged hostile work environment she faced, the lesser payment she experienced allegedly because of her sex, and the termination of her employment allegedly on account of her sex and/or in retaliation for her opposition to her employer's handling of Title VII claims.

In this case, Pratt filed her charge with the EEOC on August 16, 2019. It was therefore timely as to any claims that arose after October 20, 2018. Because many of the allegations of Pratt's complaint relate to events that occurred prior to October 20, 2018, WAF argues that those allegations cannot be considered. That is not the law. WAF's argument reflects a misunderstanding of how the time limitation in § 2000e–5(e)(1) operates. It bars claims for adverse employment actions which arose more than 300 days before the filing of a charge with the EEOC; it does not bar evidence of those claims. *See Hawthorne v. St. Joseph's Carondelet Child Center*, 982 F. Supp. 586, 592–93 (N.D. Ill. 1997) ("[A]t its best that position misses the critical distinction between (1) the admissibility into evidence and (2) the actionability under Title VII of conduct that antedates the 300–day period."). "[W]hen a plaintiff timely alleges a discrete discriminatory act, acts outside of the statutory time frame may be used to support that claim." *Kellogg v. Ball State Univ.*, 984 F.3d 525, 529 (7th Cir. 2021) (citations and internal quotation marks omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) ("Nor

8

Case 1:22-cv-00568-WCG    Filed 12/20/22    Page 8 of 10    Document 18

does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

Pratt's employment was terminated on March 15, 2019, well within the 300-day period. She claims that her termination was discriminatory and/or retaliatory. She also claims that she was paid less than a similarly situated male throughout the period of her employment. Because these claim arose or at least continued within the 300 day period prior to filing her EEOC charge, they are timely. WAF's motion to dismiss them as untimely is therefore denied.

Finally, WAF argues that the so-called manager rule bars Pratt's retaliation claim. Under that rule, an employee does not engage in protected activity when that employee's supervisory responsibilities include reporting and objecting to discriminatory conduct. *See Collazo v. Bristol-Myers Squibb Mfg.*, 617 F.3d 39, 49 (1st Cir. 2010). Rather, protected oppositional conduct is limited to actions where the employee steps outside his or her ordinary employment role. *Id.* The manager rule was developed in the context of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and it "purports to address a concern that, if counseling and communicating complaints are part of a manager's regular duties, then 'nearly every activity in the normal course of a manager's job would potentially be protected activity,' and '[a]n otherwise typical at-will employment relationship could quickly degrade into a litigation minefield.'" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 421 (4th Cir. 2015) (quoting *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008)). The Seventh Circuit has not had occasion to consider the rule. *See Chapman v. Milwaukee Cnty.*, 151 F. Supp. 3d 892, 899 (E.D. Wis. 2015) ("The Seventh Circuit has not had occasion to consider the manager rule."). The Second, Fourth, and Sixth Circuits have declined to adopt it. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015); *DeMasters*, 796 F.3d at 413; *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 579 (6th Cir. 2000).

The court declines to adopt the manager rule here. Pratt essentially alleges that WAF retaliated against her because she refused to ignore, or sweep what she viewed as valid Title VII claims under the rug, as management urged her to do. She claims she was eventually fired as a result. "Nothing in the language of Title VII indicates that the statutory protection accorded an employee's oppositional conduct turns on the employee's job description or that Congress intended to excise a large category of workers from its anti-retaliation protections." *De Masters*, 796 F.3d at 422. At least for now, Pratt's retaliation claim may proceed.

## CONCLUSION

For the foregoing reasons, WAF's motion to dismiss (Dkt. No. 7) is **GRANTED** as to her hostile work environment claim. That claim is dismissed without prejudice for the reasons set forth herein. The motion is denied as to Pratt's remaining claims. The Clerk is directed to set the matter on the court's calendar for a Rule 16 telephone scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of December, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge